UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

DAVID HARDY,

        Plaintiff,                    Case No. 2:15-cv-135

v.                                        Honorable R. Allan Edgar

MATTHEW SIZER, et al.,

        Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff David Hardy, a former prisoner currently residing in Pontiac, Michigan, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Matthew Sizer, RN, Russell DeFreitas, RN, Dawn Eicher, RN, Shannon Martin, RN, Patricia Lamb, RN, S. Langhhunn, RN, Grievance Section Manager Richard D. Russell, Physician's Assistant Unknown Luttrell, J. Schad, RN, Health Unit Manager Unknown Jenkins, Deputy Warden Unknown Lesatz, Unknown Party #1, RN, Dr. Unknown Berhane, Unknown Carr, RN, Warden Catherine Bauman, Unknown Corning, RN, S. Buskirk, RN, Health Unit Manager Ann Karp, Subrina Aiken, RN, and Dr. Unknown Abdellatif.

Plaintiff alleges that he has suffered with flat feet his entire life. As far back as 2008, Plaintiff alerted prison health services that the state issue shoes were causing damage to his feet, ankles, and knees. Plaintiff asserts that if Defendants had provided him with medically issued athletic shoes, he would have avoided much of the damage to his health. Plaintiff claims that as a result of having to wear the state issue shoes, he required two surgeries to alleviate some of the pain and damage. Plaintiff asserts that Defendants' conduct violated the Eighth Amendment and seeks damages.

**Discussion**

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his Eighth Amendment rights when they failed to provide him with the "medically necessary shoes" that he required. The Eighth Amendment

prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize

claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Plaintiff states that he filed a series of grievances on Defendants relating to problems with his shoes. Plaintiff attaches copies of the grievances and responses to his complaint. Plaintiff also attaches copies of his health care requests and kite responses. In January of 2010, Dr. John C. Pollina, M.D., indicated that over the previous five years, Plaintiff had suffered from cervical strain, lumbar strain, TMJ syndrom, right shoulder tendonitis, cervical disc herniation, and lumbar disc herniation. (ECF No. 1-1, PageID.60.) In 2010 and 2011, Plaintiff kited health care with complaints of pain in his back, neck, knees, ankles, shoulders. (ECF No. 1-1, PageID.61-62, 64-70.) X-rays of Plaintiff's knees were normal in June of 2011. (ECF No. 1-1, PageID.63.) In late 2011, Plaintiff began complaining of feet and ankle pain due to state issue shoes. (ECF No. 1-1, PageID.67-68.) Plaintiff apparently has "hammer toe." (ECF No. 1-1, PageID.52, 85.) In a November 8, 2011, kite response, it was noted that deep toe box shoes had already been ordered and would be given to Plaintiff upon arrival. (ECF No. 1-1, PageID.68.) In response to a step II grievance appeal, Defendant Bauman stated that Plaintiff had been seen by Defendant Berhane on October 13, 2011,

and that he had submitted a request for deep toe box shoes, which had been ordered and would be provided to Plaintiff upon arrival. (ECF No. 1-1, PageID.57.)

In 2012 and 2013, Plaintiff continued to complain that the shoes he had been issued were causing extremely painful corns, that he had an infection between his toes, that his ankles were swollen, and his knees popped and caused him pain. (ECF No. 1-1, PageID.75-77, 79-83.) On April 20, 2012, Defendant Lamb responded to a step II grievance appeal by stating:

> Grievant claims that he has been denied adequate treatment for knee, ankle and foot pain which he states is the result of wearing state shoes.
>
> Extensive review of the electronic medical record reveals that grievant has been evaluated on multiple occasions by many different providers re: his pain issue. The Pain Management Committee has been consulted and recommendations implemented. It has been determined that grievant does not qualify for medically issued athletic shoes. An accommodation for Deep Toe Box shoes was approved re: grievant's hammer toes.
>
> Grievant is advised that it is well within the providers' scope of practice to determine what interventions are necessary and appropriate to address grievant's symptoms. Grievant is advised to follow the plan of care as instructed.
>
> Grievant's claim of inadequate treatment is not supported.

(ECF No. 1-1, PageID.52.)

Plaintiff subsequently received the Deep Toe Box shoes. On April 21, 2013, Plaintiff filed a grievance asserting that his shoes were worn out and that they had holes in them which started in December of 2012. Plaintiff claimed that he had requested "deep pocket" shoes on four occasions and had been told to contact the quartermaster. (ECF No. 1-1, PageID.40.) The response to the step I grievance by Defendant Shannon Martin states:

> The grievant was interviewed and reported his issue is that he is being denied medical shoes. In review of the medical record it is documented that the patient was seen for complaints of foot pain on 12/27/12. The patient was assessed and noted to have a callous on the second digit of his left foot that was irritated from rubbing. The patient was again assessed for complaints of foot pain in response to a kite on 3/9/13. The RN issued a basin for foot soaks and instructed him to buy corn pads at the store. On 3/20/13 the patient was in healthcare for his annual health screen. On 4/2/13 the patient was seen for a kite received on 3/31/13 for complaints of foot pain. During this assessment it was noted that the patient was in need of new shoes and the RN indicated that they would be ordered. On 4/4/13 an order for Deep toe box shoes size 15.5A was placed to MSI. The patient was again seen on 4/19/13 at which time he was told that the shoes had not arrived and if there was a problem that healthcare would make sure that they were ordered. It was explained to the patient during this interview that the shoes take 4-6 weeks for delivery. There is no indication that the patient has been denied medical shoes. The grievance is denied.

(ECF No. 1-1, PageID.41.)

Plaintiff filed a step II appeal and Defendant Lamb responded that Plaintiff's shoes had not yet arrived and would be forwarded to IBC (Bellamy Creek Correctional Facility), where Plaintiff had been transferred, when they arrived. (ECF No. 1-1, PageID.42, 44.) On July 18, 2013, while at IBC, Plaintiff filed a grievance on Defendant Corning, complaining that he had denied him fungal cream for an infection between his toes and merely told Plaintiff to start wearing socks. (ECF No. 1-1, PageID.34.) Defendant Buskirk responded to the grievance, stating:

> The grievant and Nurse Corning were interviewed and the medical record was reviewed. The Grievant stated that he saw Nurse Corning two weeks ago and that he did nothing for his feet. The medical record indicated that he was evaluated by Nurse Corning on 7/18/13 and there was no treatment needed for the Grievant's feet. Grievant was encouraged to wear socks in his shoes and that he may purchase antifungal cream from the store if needed.

> MP (medical provider) looked at Grievant feet with this writer today and stated that he needed to keep his feet clean and dry and to continue to wear his socks. If he has any more problems then he will need to send in a health care request to be re-evaluated.
>
> The grievance [is] denied. Grievant has been evaluated and the treatment that he is requesting is not medically indicated at this time. Grievant disagreement with this medical conclusion does not support his claim that he has been denied treatment.

(ECF No. 1-1, PageID.35.)

On August 29, 2013, Defendant Aiken responded to Plaintiff's step II appeal of grievance IBC 2013 07 2097 12E3, stating:

> Upon investigation of the EMR (Electronic Medical Records), Grievant was seen by RN on 7/18 for Multiple foot complaints; corns, shoes rubbing on top of toes, sores between toes, blisters on bottom of feet. RN indicates; Has deep toe box shoes but says they still rub on the tops of his toes. Not wearing socks; says they are all worn out and the quartermaster won't give him another pair. He was strongly advised to wear what he has for now and get with the quartermaster to obtain more socks. No blisters noted. Wearing corn pads on two toes; asking for more. I told him we do not have corn pads. He shows me between his toes; the skin is whitened but intact w/o bleeding or open areas. Advised to obtain antifungal medication from the store. He was not happy with this and wanted us to provide the medication and to "make" the quartermaster issue new socks. RN instructed Mr. Hardy to kite if signs and symptoms of infection develop or symptoms that do not subside.
>
> Grievant was instructed, per **OP 03.04.100C, Pharmacy Services and Medication Management**; Refers prisoners to the store to purchase OTC medications that are not medically necessary; e.g., medicated shampoo, moisturizing lotions/creams, ibuprofen or acetaminophen for occasional headaches or muscle strain, antacids, stool softeners, high fiber bowel regulating agents, antifungal cream, antihistamines, decongestants, vitamins unless documented deficiency or TB prophylaxis, anti-itch cream for mild symptoms.
>
> Per Prisoner Accounting, as it pertains to Indigence status, June 2013 denied [due to] unemployed since 10/3/12. Grievant was approved

> effective July 1st, 2013 for $9.92 based on May 25th to June 24th activity. Effective August 1st he was approved for $0.20 indigent pay, as he had $10.80 in prior month receipts (school payroll for June). On September 1st, will be approved for $11.00.
>
> Prisoners shall be provided with a continuum of medically necessary health care services that are supported by evidence based medical research. Grievant is being evaluated, treated, diagnostic testing conducted and monitored by the Medical Provider (MP). The MP is responsible for determining the most appropriate course of treatment for his patients taking into consideration <u>all information available</u>. The MP's treatment plan for the grievant demonstrates that was done in this case. A disagreement with the medical judgment of the MP does not support a claim that the treatment plan is inappropriate. Grievant is encouraged to access health care through the kite process to address any current health care concerns.

(ECF No. 1-1, PageID.38.) Plaintiff's step III appeal was denied because his complaints were based solely on Plaintiff's disagreement with the clinical judgment of the medical provider. (ECF No. 1-1, PageID.39.)

A review of the kite responses attached to Plaintiff's complaint show that he was scheduled to see the nurse in April, June, July, September, and November of 2013, after Plaintiff complained of pain in his feet, knees, ankles, and back. (ECF No. 1-1, PageID.77-83.) Plaintiff was also seen by the RN in June and December of 2014, in order to have medications refilled, his feet examined, and his cane adjusted. (ECF No. 1-1, PageID.87-89.) On December 24, 2014, Plaintiff kited that he had received new shoes on December 22, 2014, but that they were too small. The RN responded that Plaintiff's kite would be forwarded to the quartermaster because the medical only provides accommodations, the shoes are actually ordered by the quartermaster. (ECF No. 1-1, PageID.91-92.) On February 9, 2015, Plaintiff kited that he had been experiencing itching and rash on both legs, and that he had developed a cyst on his knee. A nurse visit was scheduled. (ECF No.

1-1, PageID.93.) On June 21, 2015, Plaintiff kited that he needed a refill for the corn cushions because his shoes continued to hurt his feet. Plaintiff also complained that the cyst on his left knee cap was very painful. (ECF No. 1-1, PageID.94.) On July 15, 2015, Plaintiff had minor surgery on his knee to remove the cyst. (ECF No. 1-1, PageID.95.) Plaintiff was released on parole on October 27, 2015. (Http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=159525.)

In this case, Plaintiff suffered from hammer toe. Plaintiff was given special shoes to address this condition. It is clear from the record that Plaintiff suffered from a variety of musculoskeletal ailments as far back as 2002. (ECF No. 1-1, PageID.60.) It is also apparent from the record that while he was incarcerated, Plaintiff was seen and treated by medical personnel on numerous occasions for complaints regarding his feet, knees, ankles, back, and other wide ranging medical issues. Plaintiff was provided with deep toe box shoes to accommodate his hammer toe. Plaintiff's sole complaint in this case is that he did not receive the specific shoes that he requested. Plaintiff fails to allege any specific facts in support of his claim that the failure to provide athletic shoes was the cause of serious medical problems with his feet, ankles, and knees. In addition, as noted above, where a prisoner has received "treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh*, 643 F.3d at 169). Because the record shows that Plaintiff's treatment was not sufficiently inadequate to amount to no treatment at all as required to implicate the Eighth Amendment, Plaintiff's claims are properly dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: 5/31/2016         /s/ R. Allan Edgar
                         R. ALLAN EDGAR
                         UNITED STATES DISTRICT JUDGE